### In re YORKVILLE COAL CO.

### In re TARRULLI et al.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

### No. 132.

1. BANKRUPTCY (§ 293*) — PROPERTY BELONGING TO STATE — RECOVERY — ADVERSE CLAIMS—SUMMARY PROCEEDINGS.

In summary proceedings in bankruptcy by a trustee against third persons to recover property claimed adversely, the bankruptcy court has jurisdiction to determine whether the claim asserted is merely colorable, but may not, against claimants' objection, pass on the truthfulness of the witnesses and the weight of the testimony as affecting the merits of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

2. BANKRUPTCY (§ 293*)—ADVERSE CLAIMS—DETERMINATION—JURISDICTION.

Where a bankrupt's trustee sought to recover possession of certain wagons which were not in the bankrupt's possession when the petition was filed, but which several days before had been sold by the bankrupt's president to claimants, and their claim of title pursuant to such sale was supported by their sworn testimony that the wagons were purchased, paid for, and delivered to them, such testimony showed the existence of an adverse claim which was not merely colorable, however unsustainable on the merits, and hence was not determinable in summary proceedings in bankruptcy over claimants' protest.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of the Yorkville Coal Company. Petition by Joseph Tarrulli and another to revise an order directing the delivery of certain wagons by petitioners to the trustee. Order reversed.

An involuntary petition in bankruptcy was filed against the Yorkville Coal Company on December 21, 1912, and George E. Leonard was appointed receiver and subsequently trustee. An order of adjudication was entered on January 7, 1913. The trustee, about March 3, 1913, moved that the petitioners herein, Tarrulli and Sandquist, should be required to show cause why they should not be required to turn over to the trustee certain wagons which it was alleged belonged to the bankrupt. A hearing was had before a special master. The petitioners, before any evidence was taken, while evidence was being taken and at the conclusion of the evidence, contended that the special master had not any jurisdiction and that it was not in his power to go any further than to see whether there was any basis for an adverse claim. Their objection was overruled, and they took an exception. The special master recommended that an order be issued requiring the petitioners to turn the wagons over to the trustee, and that they should be required to pay the costs and disbursements of the proceeding. Such an order was made by the District Court.

Peter Klein, of New York City, for appellants.

Abraham Brill, of New York City, for trustee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ROGERS, Circuit Judge (after stating the facts as above). [1] The question which comes before this court is whether a bankruptcy court in a summary proceeding to determine whether an adverse claim existed in fact at the time of the filing of a petition in bankruptcy or was simply "colorable," has a right to pass upon the truthfulness of the witnesses and the weight of the testimony and thus determine the merits of the claim.

The property involved consists of three wagons which the trustee claims as the property of the bankrupt which claim is denied by the petitioners, who assert an adverse title.

[2] It appears from the facts disclosed in the record that the wagons which the trustee seeks to recover were not in the bankrupt's possession on December 21, 1912, when the petition in bankruptcy was filed. On that day, and on several days prior, the wagons were in the possession of Sandquist. Tarrulli's claim, as the record shows, is based upon a sale which he alleges was made of the wagons to him by Benedetto, the president of the bankrupt corporation, which sale, it is alleged, also took place prior to the day when the petition in bankruptcy was filed. This claim is supported by the sworn testimony of both Tarrulli and Benedetto. There is sworn testimony to the effect that the property was paid for by Tarrulli and delivery was made under the contract. The testimony shows, therefore, an adverse claim, and as the facts upon which it rests are stated under oath as having occurred prior to the date when the petition in bankruptcy was filed, the basis for the adverse claim existed at the time of the filing of the petition. The purpose of the preliminary investigation is to find out whether there are any facts which might form a basis of an adverse claim so as to send it to trial in a plenary suit. When the inquiry discloses such facts the purpose of the preliminary investigation is accomplished, and the inquiry should then have been brought to a close. In this preliminary investigation in the bankruptcy court there is no right to try the claim upon the merits, to weigh testimony against testimony, and to find certain testimony to be true and certain testimony not to be true. That would be to deny the parties the right to a trial before a jury.

The special master in this proceeding seems to have understood that he had the right to weigh testimony against testimony and to pass upon the credibility of the witnesses, and the conclusion he came to was that the claim made by Tarrulli and supported by the testimony of Benedetto that a sale had taken place was untrue, and was an afterthought originated after the filing of the petition in bankruptcy and in order to defeat the trustee's right to the property. He so reported to the District Court, and recommended that an order be entered requiring Tarrulli and Sandquist to turn the wagons over to the trustee, and that they should pay the costs and disbursements of the proceeding. In the District Court the same course was pursued. The court weighed the evidence and tried the case on the merits. The court below in its opinion found in favor of the trustee and against the claimants, saying:

"It is true that the testimony is three to one against the trustee, but numbers count for very little. In the first place, Benedetto's story is not borne

out by the books. Moreover, the general earmarks of the transaction are so suspicious."

We think the court below fell into error through its misapprehension of the decision of the Supreme Court in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. In that case the court held that the bankruptcy court had jurisdiction in a summary proceeding to ascertain whether there was any basis for an adverse claim actually existing at the time of the filing of the petition, or whether the claim was merely "colorable." The court below evidently thought that, in order to determine whether the claim asserted by Tarrulli and Sandquist was colorable, it had the right to determine whether the claim was a fraudulent one, based on false testimony and not worthy of credence. This certainly was not the meaning of the Supreme Court. The court said that the bankruptcy court acts within its jurisdiction in a summary proceeding in entering into an inquiry to find whether there is any basis in fact in support of a party's contention that he is an adverse claimant. It is to find out whether the claim is merely colorable, or whether it is "real, even though fraudulent and voidable." And if the claim is real, even though it may be fraudulent and voidable, the court must decline to finally adjudicate on the merits. An adverse claim, in other words, does not fall short of being *real* because the court thinks it is founded on false testimony and is fraudulent and voidable. It should be noted that in the Nugent Case no adverse claim to the cash in question was made by the respondent at any time until after the decision of the District Court, when he asked to amend his pleading by asserting that he held the money not as the agent of the bankrupt but adversely to him. Leave to amend was refused, a disposition of the matter which the Supreme Court held to be within the discretion of the District Judge at that stage of the case and not reviewable. The Supreme Court, moreover, said of the proposed amendment that it—

"did not even then set forth what money he had received, and how and when it came to his hands, or the circumstances under which he claimed to hold it adversely, but put forward simply a conclusion of law."

The case at bar is materially different. The claim of Tarrulli and Sandquist in this proceeding is a real adverse claim. That it may be found ultimately to be fraudulent and voidable is not at all material at this stage of the proceedings. The basis of an adverse claim is disclosed by the testimony when it is of such a nature that, if submitted in a court and no evidence is offered in contradiction, it would be sufficient to support a judgment in favor of the claimant. A claim is not adverse if it consists merely in a refusal to turn over property to the trustee, but it is not prevented from being adverse because it is based on false testimony, or originates in a fraudulent transaction. When the bankruptcy court undertakes to pass upon the question as to the truth or falsity of the testimony on which the claim rests, it usurps a jurisdiction which it does not possess, and it assumes to pass on the merits.

In Re Tarbox (D. C.) 185 Fed. 985, the court says:

"Plainly the trustee cannot enlarge the referee's jurisdiction merely by alleging that the claim under which the property is held has not merits or is fraudulent, or by calling it 'merely colorable,' when no other reasons appear for so describing it than its alleged want of merit or fraudulent character."

And in Re Blum, 202 Fed. 883, 121 C. C. A. 241, the court said:

"The term 'colorable,'" as used with reference to adverse claims, means "merely that if a respondent sets up as facts, and not as conclusions of law, matters which, if true, would constitute a statement of an adverse claim, then the claim would be adverse and not colorable, and not within the jurisdiction of the referee."

The bankruptcy court in a summary proceeding may inquire whether a claim is not merely asserted (colorable), but whether there are facts which, if true, would be the basis for a legal claim. Whether the facts are true or fraudulent or false or fictitious, it cannot determine without the claimant's consent. It is the claimant's right to have the truth of the testimony and the merits of the claim determined, if he so prefers, in a plenary suit.

The order is reversed, with costs to the petitioners appellants.