**In re BUROFSKY.**

No. 68961.

District Court, D. Massachusetts.

Jan. 15, 1946.

Louis K. Nathanson, of Boston, Mass., for respondent.

Daniel I. Rotman, of Boston, Mass., for trustee.

WYZANSKI, District Judge.

This case came before the Court upon Referee Black's certificate on review filed July 30, 1945.

The principal issue involved is whether the Referee had jurisdiction to determine that Lee Burofsky, sometimes known as Lena Burofsky, the wife of the bankrupt, should turn over to the trustee in bankruptcy $1,250.

From the Referee's certificate and other papers which were part of the record before the Referee and hence a part of the record before this Court, these appear to be the facts:

June 7, 1944, Jerome L. Burofsky was adjudicated a bankrupt. A trustee in bankruptcy was appointed.

November 7, 1944, the trustee in bankruptcy filed before the Referee a petition to turn over assets. The petition requested that the Referee should direct Lee Burofsky and the bankrupt to turn over certain real estate, title to which was in the name of Lee Burofsky, but the beneficial ownership of which was claimed to be in the bankrupt, inasmuch as, in the view of the trustee, the real estate had been bought with funds of the bankrupt.

March 16, 1945, the Referee issued orders to show cause, addressed to Lee Burofsky and the bankrupt. Those orders directed them to show cause as to why the real estate should not be turned over as requested in the trustee's petition.

April 5, 1945, the bankrupt and his wife appeared before the Referee and a hearing was then held. In a subsequent document filed May 10, 1945, and entitled "Referee's Order on Petition to Turn Over Assets," the Referee stated that at this April 5th hearing:

"The wife of the bankrupt, Lee Burofsky, attended, testified, and was represented by counsel. She claimed the deposits made in the Grove Hall Savings Bank between February 1943 and January 1944 aggregating about $1500 were made from her own funds and were her separate property."

The funds thus referred to by the Referee were the funds which in its petition the trustee had asserted were used as part of the purchase price of the real estate covered by the trustee's petition to turn over assets.

Supplementing this statement by the Referee, counsel for the trustee in bankruptcy conceded before me that at the hearing of April 5, 1945, before the Referee, the bankrupt's wife in great, if incredible, detail testified as to the gifts which she had received from wealthy relatives and which she had used to buy the real estate in question.

The hearing which began on April 5, 1945, was continued until April 19, 1945, and prior to the latter date Lee Burofsky engaged fresh counsel, Louis K. Nathanson, Esq.

On April 19, 1945, the Referee reconvened the hearing in the matter of the proposed turn-over order against Lee Burofsky. At that time as counsel for Mrs. Burofsky, Mr. Nathanson filed a written objection to the Referee's jurisdiction. This objection was denied by the Referee, who in his certificate on review makes the following explanation:

"Before formal order was made the bankrupt's wife engaged new counsel who filed a plea to the Referee's jurisdiction. This plea was denied on the ground that the evidence already offered showed that the claim of the bankrupt's wife was colorable only and that she was not a bona fide adverse claimant."

The Referee's certificate also shows that Mrs. Burofsky had "claimed that this money was her own" (page 2) and that she had received the money through "gifts from her wealthy relatives" (page 2).

On May 10, 1945, the Referee entered an order on the trustee's petition to turn over assets. In this order, after reciting that the pleas of the bankrupt and his wife challenging the Referee's jurisdiction have been denied, the Referee finds "that the claim of the wife is not supported by any reasonable evidence and that the money deposited by her in the Grove Hall Savings Bank during the period above set forth was the money of her husband, the bankrupt. This money is still in the possession or control of the bankrupt."

After having made this finding the Referee ordered the bankrupt and his wife, "to turn over to the trustees forthwith the sum of $1,250."

It is this order which is in question in these review proceedings and it is this order which the petitioners for review, the bankrupt and Mrs. Burofsky, assert is not within the jurisdiction of the Referee.

Upon the facts as above set forth there arise two questions of law, (1) did the bankrupt and his wife consent to the Referee's exercise of summary jurisdiction, and (2) if not, could the Referee nonetheless proceed to exercise summary jurisdiction on the ground that the wife's claim to the money was merely "colorable" or "frivolous"?

■ The first point is disposed of in the negative by the ruling in Cline v. Kaplan, 323 U.S. 97, 100, 65 S.Ct. 155, 157. It was settled by that case that even though they at the outset were "participating in a hearing on the merits" before the Referee, a bankrupt and an adverse claimant do not consent to that Referee's summary jurisdiction if "before the matter went to the referee for determination, respondents explicitly raised objection to the disposition of their claim by summary procedure" and "later amplified that objection by a written motion." "Consent is not given even though claimant 'participated in the proceedings' provided formal objection to summary jurisdiction is made before entry of the final order."

Before discussing the law respecting the second point, certain of the facts above set forth should be emphasized. The Referee's certificate shows that the wife claimed before the Referee that she had received the moneys used to buy the real estate from her wealthy relatives. And it was conceded in the oral argument before me that to support that contention the wife took the stand and so testified before the Referee. Thus the wife, no matter how little

we may be inclined to believe her tale, raised a dispute of fact.

■ Where there is a dispute of fact between the claimant and the trustee and the claimant supports her version by sworn testimony which a jury could believe, the trustee in bankruptcy has failed to show that the controversy between him and the claimant is colorable and frivolous so that the Referee may pass upon it in a summary way. The decision in Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897, is precisely in point. There a trustee in bankruptcy by summary proceedings before a referee sought to have the bankrupt's wife turn over funds which he claimed were the bankrupt's. She asserted that the money was her individual property, acquired and held by her in good faith. The Referee thought that the wife's "claim was based on fraud and merely colorable; and that the money was an asset of the estate and subject to the summary jurisdiction of the court" (271 U.S. 192, 46 S.Ct. 468, 70 L.Ed. 897). The District Court agreed, but the Circuit Court of Appeals reversed and took "the view 'that a claim alleged to be adverse is only colorably so when, admitting facts to be as alleged by the claimant, there is, as matter of law, no adverseness in the claim.'" (271 U.S. 194, 46 S.Ct. 468, 70 L.Ed. 897.) The Supreme Court affirmed the Circuit Court of Appeals. In an opinion by Mr. Justice Sanford it pointed out that a claim is not merely colorable where, among other situations, "the validity of the respondent's claim depended upon disputed facts." (271 U.S. 195, 46 S.Ct. 469, 70 L.Ed. 897.) To the same effect are cases in this Circuit. In re Flynn, 1 Cir., 300 F. 693; In re Farrow, D.C.Mass., 13 F.2d 261. See Edward J. Ross, Federal Jurisdiction in Suits by Trustees in Bankruptcy, 20 Iowa L.Rev. 565, 584, 585. And see the emphasis placed by Stone J. in May v. Henderson, 268 U.S. 111, 116 line 9, 45 S.Ct. 456, 69 L.Ed. 870 on the critical point as to whether the facts are disputed or undisputed.

■ The language of Mr. Justice Frankfurter in Cline v. Kaplan, 323 U.S. 97, 99, lines 9–12, 65 S.Ct. 155, 156, is not to the contrary. He said: "Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily." This use by Mr. Justice Frankfurter of the ambiguous passive tense does not mean that the adverse claim-

ant has the burden of proving that his claim is not colorable. The true doctrine is that to maintain summary jurisdiction the trustee in bankruptcy (in the absence of consent) has the burden of establishing that the claim he asserts rests upon undisputed facts and that therefore the adverse party's claim is colorable or frivolous. In short, the trustee has both the burden of showing that the adverse claim is so colorable that the referee has jurisdiction and the burden of showing that his own claim is so deserving that he should prevail on the merits.

The referee's order is set aside for lack of jurisdiction.